Daniel J. Anderson (IA Bar No. 20215)
WERTZ, DAKE & ANDERSON
1500 Center St. NE #101
Cedar Rapids, IA 52402-5500
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
danderson@wertzlaw.com

Jessica L. Blome (MO Bar No. 59710) *Pro Hac Vice Pending*
Jeffrey D. Pierce (CA Bar No. 293085) *Pro Hac Vice Pending*
ANIMAL LEGAL DEFENSE FUND
170 E. Cotati Avenue
Cotati, CA 94931
Telephone: (707) 795-2533
Facsimile: (707) 795-7280
jblome@aldf.org
jpierce@aldf.org

David J. Stagman (IL Bar No. 6217440) *Pro Hac Vice Pending*
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 577-4416
david.stagman@kattenlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| TRACEY K. KUEHL, an individual; LISA K. KUEHL, an individual; KRISTINE A. BELL, an individual; NANCY A. HARVEY, an individual; JOHN T. BRAUMANN, an individual; and ANIMAL LEGAL DEFENSE FUND, a non-profit corporation,<br><br>Plaintiffs,<br>v.<br><br>PAMELA SELLNER, an individual; TOM SELLNER, an individual; and CRICKET HOLLOW ZOO, a non-profit corporation,<br><br>Defendants. | Case No. 16-CV-2078<br><br>**MOTION FOR AND BRIEF IN SUPPORT OF A PRELIMINARY INJUNCTION**<br><br>**Expedited Relief Requested** |

Pursuant to Rule 65, Plaintiffs respectfully move this Court for a preliminary injunction compelling Defendants Pamela and Tom Sellner and the Cricket Hollow Zoo, Inc. to immediately transfer a non-ambulatory African Lioness exhibiting signs of respiratory distress and a lethargic male African Lion from the Cricket Hollow Zoo in Manchester, Iowa to The Wild Animal Sanctuary in Keenesburg, Colorado, where they will have access to world-class veterinary care (or, should it be necessary, palliative end-of-life care). Plaintiff Animal Legal Defense Fund (ALDF) is willing to assume the costs of transferring both lions to Colorado, and the Sanctuary will assume all costs associated with their care and rehabilitation there. In the alternative, Plaintiffs respectfully move the Court to compel Defendants to permit a qualified veterinarian to visit and examine the lions in order to determine appropriate next steps for proper diagnosis and treatment. In support of their Motion, Plaintiffs submit the following argument in support of emergency relief; the Affidavits of Dr. Megan Ross, Pat Craig, and Jeff Marlin; and a Proposed Order:

## Summary of Relevant Facts

On January 22, 2016, the U.S. Fish and Wildlife Service listed two subspecies of the African Lion under the ESA. Fed. Reg. Vol. 80, No. 246 (Dec. 23, 2015), *available at* https://www.gpo.gov/fdsys/pkg/FR-2015-12-23/pdf/2015-31958.pdf (amending 50 CFR § 17.11 to include the subspecies *Panthera leo leo* and *P. l. melanochaita* as threatened and endangered, respectively). Accordingly, as of January 22, all subspecies of African Lions are protected by the ESA and enjoy the protections afforded to threatened and endangered animals therein, including Section 9's prohibition on the unlawful "take" of listed species by harassment or harm. 16 U.S.C. § 1538, 50 CFR §§ 17.21(c), 31(a). Three weeks later, on

February 11, 2016, this Court entered an Order and Final Judgment declaring that Defendants Pamela and Tom Sellner and the Cricket Hollow Zoo, Inc. had violated and were likely to continuing violating the Endangered Species Act by "taking" endangered tigers and lemurs under their care. *See Tracey Kuehl, et al. v. Pamela Sellner, et al.*, Case No. C14-2034, ECF No. 83, Order for Declaratory Judgment and Injunctive Relief (N.D. Ia. Feb. 11, 2016) (hereinafter "February 2016 Order"). The Court ordered Defendants to transfer the tigers and lemurs to new homes and refrain from acquiring listed species at all times in the future. *Id.*

Since the October 2015 trial over the Defendants' take of endangered tigers and lemurs, the United States Department of Agriculture's Animal and Plant Health Inspection Service (APHIS) has inspected the Cricket Hollow Zoo on at least three occasions: in December 2015 (Exhibit 2); February 2016 (Exhibit 3); and April 2016 (Exhibit 4). According to USDA's reports and animal counts, at least one African Lion has disappeared from the Cricket Hollow Zoo. Ex. 2. Zoo visitor Jeff Marlin corroborated USDA's animal count during his visit on June 24, 2016. *See* Affidavit of Jeff Marlin, ¶ 4 (Mr. Marlin observed "one male lion and one female lioness"). Mr. Marlin took video of both lions during his visit. A true and accurate copy of the video Mr. Marlin made at the Cricket Hollow Zoo on June 24, 2016, is attached to his Affidavit as Exhibit 1. A true and accurate copy of the a still image from the video he took, showing the Frican Lioness in her sickly, nonambulatory state is attached to his Affidavit as Exhibit 1A.

During his visit, Mr. Marlin observed that both lions appeared distressed, but the lioness's condition looked severe. Aff. ¶ 5, Exhibits 1 and 1A. According to Mr. Marlin, the

lioness "just stood in one corner of her cage shivering even though she was in direct sunlight. She also could not stand or walk properly. Both her hind legs were bent as if she wanted to sit, but she seemed to be too sore or agitated to do so. She was panting so hard that I feared she was hyperventilating, but she was too weak to move to the shade. She just looked so sickly, we all thought she would die." *Id.*

USDA last inspected the Cricket Hollow Zoo on April 14, 2016. Ex. 4. Notably, APHIS Veterinary Medical Officer Dr. Chad Moore did not document any observations about the lioness's presumably relatively healthy condition on that day. *Id.* Plaintiffs believe that the lioness fell ill sometime after April 14 but before Mr. Marlin's June 24 visit. And as Defendants' past pattern and practice suggests, the lioness is likely on her way to the same tragic and irreversible fate that befell endangered tigers Raoul, Casper, Luna, and Miraj, who all died soon after falling ill due to lack of veterinary care. *See* February 26 Order, pp. 63-67.

Executive Director of The Wild Animal Sanctuary (TWAS) Pat Craig is familiar with the Court's February 2016 Order and the Cricket Hollow Zoo's USDA Inspection Reports because he participated in the sanctuary placement hearing before this Court when it determined placement for the Defendants' endangered tigers. Affidavit of Pat Craig, ¶ 7. Mr. Craig also recently reviewed Jeff Marlin's video and was concerned about the health of the African Lioness that appears at time stamp 5:05. *Id.* at ¶ 7, 8. At TWAS, Mr. Craig is responsible for ensuring all animals in his care are treated humanely, which includes the provision of necessary veterinary care. *Id.* at ¶ 3. After watching Mr. Marlin's video footage of the African Lioness suffering at the Cricket Hollow Zoo, Mr. Craig

concluded that he would have ordered veterinary treatment for the lioness's symptoms immediately and removed her from public exhibition to prevent exacerbation of her stress. *Id.* at ¶ 9. Dr. Megan Ross, who is Vice President for Animal Care at Chicago-Illinois's Lincoln Park Zoo is similarly concerned about the African Lioness's health. Affidavit of Dr. Megan Ross,¶ 5. Both Mr. Craig and Dr. Ross recommend that the African Lioness be evaluated by a qualified veterinarian immediately. Craig Aff. ¶ 10; Ross Aff. ¶ 6. Dr. Ross is now searching for a qualified veterinarian willing to travel to the Cricket Hollow Zoo in order to examine and potentially treat the lioness. Ross Aff., ¶ 5-7. As a member of the Association of Zoos & Aquariums, the Lincoln Park Zoo has access to the veterinarian community specializing in the treatment of captive lions. *Id.* at ¶ 7.

## Jurisdiction

The majority of federal cases recognize the power of the court to issue a preliminary mandatory injunction. *See, e.g., Ex parte Lennon*, 166 U.S. 548, 556 (1897) ("[I]t was clearly not beyond the power of a court of equity, which is not always limited to the restraint of a contemplated or threatened action, but may even require affirmative action, where the circumstances of the case demand it."). The 8th Circuit has long recognized this power to issue mandatory injunctions. *See, e.g., Love v. Atchison, T. & S. F. Ry. Co.*, 185 F. 321, 321 (8th Cir. 1911) ("Courts of equity have plenary power, and it is often their duty to issue mandatory injunctions to restore and then to maintain a condition of things that has been wrongfully disturbed or changed.").

The standard governing whether to issue a preliminary injunction in the 8th Circuit does not distinguish between mandatory and prohibitory injunctions. Rather, a single

standard governs all preliminary injunctions. In *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589 (8th Cir. 1984), for example, defendant hybrid seed corn developer sought to vacate a mandatory preliminary injunction issued against it by arguing "that a substantially heavier burden rests upon a party seeking to obtain a mandatory injunction rather than simply a prohibitory injunction." *Ferry-Morse*, 792 F.2d at 591-92. In rejecting this argument and upholding the preliminary injunction, the Appeals Court indicated that it "ha[d] recently clarified the standards to be considered in granting or denying a preliminary injunction." *Id.* The Appeals Court did so merely by citing the general four-part test standard it had set forth three years prior in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir.1981); *see also* Section I, p. 6, *infra*.

As set forth below, however, the standard governing whether to issue a preliminary injunction in a case brought pursuant to the ESA departs from this traditional standard. Instead, where the movant seeks to protect endangered animals, the movant need only prove likelihood of success on the merits, since Congress has already balanced the equities in favor of protecting threatened and endangered species. *See Tracey Kuehl, et al. v. Pamela Sellner, et al.*, Case No. C14-2034, ECF No. 100, Order Denying Motion for Stay and Motion for Special Master, (N.D. Ia. April 29, 2016) (hereinafter "Denial of Stay") at 6 (holding "The Court in *Nat'l Wildlife Federation v. Harvey*, 440 F. Supp. 2d 940, 958 (E.D. Ark. 2006), opined that '[w]hen an endangered species is allegedly jeopardized, the balance of hardships and public interest tip in favor of the protected species.' I agree.")[1].

---

[1] In *Nat'l Wildlife Federation v. Harvey*, the court enjoined the Army Corps of Engineers from continuing a construction project after the court determined the Corps had

## Argument

In the accompanying Verified Complaint, Plaintiffs allege that Defendants have illegally "taken" by harm and harassment threatened or endangered African Lions at the Cricket Hollow Zoo in violation of Endangered Species Act ("ESA") 16 U.S.C. § 1538 and that Defendants will likely cause an African Lioness's death if the Court does not intervene to ensure she receives urgent veterinary care. Plaintiffs must request emergency relief at this time because Defendants have proven incapable and unwilling to provide urgent veterinary care to at least four endangered big cats in the past year, who all died after Defendants failed to provide them adequate veterinary care. Plaintiffs are likely to succeed on the merits and are therefore entitled to injunction relief to prevent Defendants from further violations of Section 9 of the ESA as to their African Lions.

### I. The ESA requires emergency relief in the form of a preliminary injunction to save the lives of listed species.

The ESA gives "any person" the right to commence a civil suit in order to enjoin current and future violations of the ESA or its implementing regulations. 16 U.S.C. § 1540(g)(1). Under the Supreme Court's "frequently reiterated" standard for injunctive relief, a plaintiff must establish: "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct., 365, 374-375 (2008), *accord Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981).

---

violated Section 7 of the ESA when developing its haphazard plan to protect the critically endangered Ivory-billed Woodpecker. 440 F. Supp. 2d 940, 959 (E.D. Ark. 2006).

1. **Plaintiffs are likely to succeed on the merits.**

After four days of evidence and argument last October, Plaintiffs successfully proved that Defendants harass and harm endangered exotic cats in their possession. In its February 2016 Order, the Court set out the factual circumstances leading to the untimely deaths of four endangered tigers, which led the Court conclude that Defendants failure to provide "timely and appropriate veterinary care" harmed the endangered tigers at the Cricket Hollow Zoo. To wit:

> The Code of Federal Regulations requires all exhibitors to provide adequate veterinary care for all animals housed at their facility. Obviously, if an exhibitor chooses to keep endangered species, it must assume the obligation—and the cost—of providing such care. I believe Cricket Hollow's failure to provide timely and appropriate veterinary care has delayed or prevented adequate treatment, thus resulting in "injury" to the tigers. Any act which injures a protected animal constitutes "harm" within the definition of "take" in the Endangered Species Act. 50 C.F.R. § 17.3.

*Id.* at 67.

Nothing has changed at the Cricket Hollow Zoo since October. To be sure, Defendants attempted to use allegedly improved conditions at the Cricket Hollow Zoo to support their request for a stay of the Court's February 2016 Order. *See* Denial of Stay. According to Defendants, they are deploying a single volunteer and their same bovine veterinarian more frequently now. *Id.* In response, the Court noted that Plaintiffs had already proven Defendants are incapable of complying with the ESA given the resources available to them. *Id.* The same is true for the lions. Defendants are incapable of providing the care needed to save the African Lioness's life or palliative care to ensure a comfortable and humane death. Plaintiffs are as likely to succeed on the merits of their Section 9 case

against Defendants for the unlawful take of African Lions of the Cricket Hollow Zoo as they were for the unlawful take of endangered tigers and lemurs last October.

### 2. Plaintiffs—and the African Lioness—will be irreparably harmed absent emergency injunctive relief.

In the Eighth Circuit, it is "a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction." *Burlington Northern R. Co. v. Blair*, 957 F.2d 599, 601 (8th Cir. 1992). Nevertheless, Plaintiffs and the African Lions suffering at the Cricket Hollow Zoo as a result of Defendants' continued violations of Section 9 of the ESA will be irreparably harmed absent injunctive relief.

TWAS Executive Director Pat Craig has reviewed the Court's February 2016 Order, USDA Inspection Reports, and Mr. Marlin's video. Craig Aff. ¶ 7, 8. Mr. Craig believes the African Lioness is in urgent need of veterinary care. Craig Aff. ¶ 10. In addition, Mr. Craig would have removed the African Lioness from exhibition in order to prevent the exacerbation of any of her symptoms due to the stress of public display. *Id.* at ¶ 9. By exhibiting the African Lioness in her extremely deteriorating condition, Defendants have demonstrated they are not yet complying with the ESA's prohibition on the unlawful take of listed species and are dangerously close to causing the irreparable death of yet another endangered big cat.

Moreover, as alleged in Plaintiffs' Verified Complaint, Plaintiffs are emotionally and aesthetically connected to the animals at the Cricket Hollow Zoo, which includes the African Lions living there. At the time of their visits from 2011-2013, Plaintiffs observed

the lions suffering in deplorable conditions. Images of retching lions with flies swarming their heads are etched in their minds. Plaintiffs may not be able to visit the Zoo again—either because they cannot take the emotional assault of bearing witness to such animal suffering or because Defendants will call law enforcement to have them detained—but they have continued to monitor the conditions at the Cricket Hollow Zoo. Plaintiffs Tracey and Lisa Kuehl, for example, visit the USDA's online inspection report database frequently to read about the conditions at the Zoo. Complaint, ¶ 17, 25. If USDA notes violations of the Animal Welfare Act that trouble them, then the sisters write letters to USDA voicing their concern for the animals living there. *Id.* Plaintiffs Kristine Bell and Nancy Harvey are distraught over the news that one lion has disappeared from the Cricket Hollow Zoo, and Nancy wept when she watched Mr. Marlin's video of the lioness's unsteady posture and heavy breathing. *Id.* at 31, 32, 39.

### 3. The balance of equities tips in favor of preventing further harassment and harm of Defendants' endangered African Lions.

In the Eighth Circuit, where the statute provides for injunctive relief,

> it is not the role of the courts to balance the equities between the parties. The controlling issue is *whether Congress has already balanced the equities* and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in, or is about to engage in, any activity which the statute prohibits. The proper role of the courts is simply to determine whether a violation of the statute has or is about to occur.

*Burlington Northern R. Co. v. Blair*, 957 F.2d 599, 601-602 (8th Cir. 1992) (emphasis added). In keeping with this well-accepted standard, courts in numerous jurisdictions have found that "[t]he traditional preliminary injunction analysis *does not apply* to injunctions issued pursuant to the [Endangered Species Act]." *Nat'l Wildlife Fed'n v. Nat'l*

*Marine Fisheries Serv.*, 422 F.3d 782, 793 (9th Cir. 2005) (emphasis added). The reason is clear:

> In cases involving the ESA, Congress removed from the courts their traditional equitable discretion in injunction proceedings of balancing the parties' competing interests. As the Supreme Court has noted, Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities. Accordingly, courts may not use equity's scales to strike a different balance.

*Id.* at 793–94 (internal citations and quotation marks omitted). Indeed, "the ESA strips courts of at least some of their equitable discretion in determining whether injunctive relief is warranted." *Cottonwood Envtl. Law Center v. United States Forest Serv.*, 789 F.3d 1075, 1090 (9th Cir. 2015) (citing *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531 (1987) (explaining that the ESA "foreclose[s] the traditional discretion possessed by an equity court")). In other words, Congress has spoken, and the equities favor granting injunctions in order to save the lives of protected species where possible. *See also* Denial of Stay, at 6.

### 4. An injunction is in the public interest.

Plaintiffs bring this action pursuant to the ESA, 16 U.S.C. § 1531 *et seq.* Congress passed the ESA in recognition that species in danger or threatened with extinction "are of esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). Enforcement of the ESA therefore advances numerous national values, just as violation of the ESA undermines those values. Among those national values is the humane treatment of special animals, whether in the wild or in captivity. To be sure, the ESA "does not distinguish between a taking of the whole species or only one member of the species. *Any taking and every taking*—even of a single

individual of the protected species—is prohibited by the Act. *See* 16 U.S.C. § 1538. Hence the future threat of even a single taking is sufficient to invoke the authority of the Act." *Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*, 896 F. Supp. 1170, 1180 (M.D. Fla. 1995). That is to say, "when an endangered species is allegedly jeopardized, the balance of hardships and public interest tip in favor of the protected species." *Nat'l Wildlife Federation v. Harvey*, 440 F. Supp. 2d 940, 958 (E.D. Ark. 2006) (citations omitted).

Plaintiffs seek emergency injunctive relief in order to prevent further harassment, harm, injury, and death of two endangered African Lions. Congress has already articulated the public interest in preventing the unlawful take of protected species in the text of the ESA. Plaintiffs have met their burden for a preliminary injunction to obtain urgently needed veterinary care for the two African Lions suffering at the Cricket Hollow Zoo.

## Conclusion

Plaintiffs respectfully request that the Court issue a preliminary injunction compelling Defendants to immediately transfer two African Lions from the Cricket Hollow Zoo in Manchester, Iowa to The Wild Animal Sanctuary in Keenesburg, Colorado, where they will have access to veterinary care or alternatively to compel Defendants to permit a qualified veterinarian to visit and examine the lioness in order to determine appropriate next steps for a proper diagnosis and treatment. Plaintiff Animal Legal Defense Fund will assume the costs associated with transferring the lions to The Wild Animal Sanctuary, and the Sanctuary will assume all costs associated with their care and rehabilitation there.

Dated: July 11, 2016					Respectfully submitted,

/s/ *Daniel J. Anderson*
Daniel J. Anderson (IA Bar No. 20215)
WERTZ, DAKE & ANDERSON
1500 Center St. NE #101
Cedar Rapids, IA 52402-5500
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
danderson@wertzlaw.com

/s/ *David Stagman*
David J. Stagman (IL Bar No. 6217440)
*Pro Hac Vice Pending*
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 577-4416
david.stagman@kattenlaw.com

/s/ *Jessica L. Blome*
Jessica Blome (*pro hac vice pending*)
jblome@aldf.org
/s *Jeffrey D. Pierce*
Jeffrey Pierce (*pro hac vice pending*)
jpierce@aldf.org
ANIMAL LEGAL DEFENSE FUND
170 E. Cotati Avenue
Cotati, CA 94931
Telephone: (707) 795-2533
Facsimile: (707) 795-7280

Attorneys for Plaintiffs