# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| TRACEY K. KUEHL et al., | |
| Plaintiffs, | No. 16-CV-2078-LRR |
| vs. | **ORDER** |
| PAMELA SELLNER et al., | |
| Defendants. | |

The matter before the court is Plaintiffs' "Motion for Preliminary Injunction" ("Motion") (docket no. 3), which they filed on July 11, 2016. In the Motion, Plaintiffs request that the court grant a preliminary injunction ordering the immediate transfer of "a non-ambulatory African Lioness exhibiting signs of respiratory distress and a lethargic male African Lion from the Cricket Hollow Zoo in Manchester, Iowa to The Wild Animal Sanctuary in Keenesburg, Colorado . . . ." Motion at 2. In the alternative, Plaintiffs request that the court "compel Defendants to permit a qualified veterinarian to visit and examine the lions in order to determine appropriate next steps for proper diagnosis and treatment." *Id.* Defendants have not filed a written response to the Motion. On July 21, 2016, the court held a hearing on the Motion at which both Plaintiffs and Defendants were present. *See* July 21, 2016 Minute Entry (docket no. 13). At the hearing, Defendants agreed to permit a qualified veterinarian to examine the lions in question.[1] Nevertheless, the court shall proceed to analyze the Motion under the proper framework to satisfy itself that emergency relief is warranted.

Prior to issuing a preliminary injunction, the court must provide notice and a

---

[1] At the hearing, the parties agreed to permit a qualified veterinarian to examine each lion at Cricket Hollow Zoo, as it is unclear exactly which lions are at issue.

hearing to the opposing party. *See* Fed. R. Civ. P. 65(a). However, the Rules also provide that the court may issue a temporary restraining order under Rule 65(b) without notice to the opposing party. Here, only limited notice was provided to Defendants, but Defendants appeared at the hearing.

The court may issue a temporary restraining order when "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). "Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2). The temporary restraining order expires when the court so orders, but no later than fourteen days after entry of the order, unless the court extends the deadline for good cause or the opposing party consents to an extension. *See id.* Upon issuance of a temporary restraining order, "the motion for preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." Fed. R. Civ. P. 65(b)(3).

"A district court has broad discretion when ruling on a request for preliminary injunction . . . ." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, __ F.3d __, __, 2016 WL 3383978, at *2 (8th Cir. June 20, 2016) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013)). "A district court's decision to issue a preliminary injunction 'depends upon a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest.'" *Id.* at *3

(quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 729 n.3 (8th Cir. 2008) (en banc)) (quotation marks omitted); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (listing the factors courts consider in issuing preliminary injunctions). Similar standards apply to both preliminary injunctions and temporary restraining orders. *See McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 361 F. Supp. 2d 912, 918 (N.D. Iowa 2005). However, "[t]hese factors are not a rigid formula . . . . The basis of injunctive relief in the federal courts has always been irreparable harm and the inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)) (quotation marks omitted) (third alteration in original).

Some courts have found that "[t]he traditional preliminary injunction analysis does not apply to injunctions issued pursuant to the [Endangered Species Act]." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793 (9th Cir. 2005). This is because, by enacting the Endangered Species Act, "Congress removed from the courts their traditional equitable discretion in injunction proceedings of balancing the parties' competing interest." *Id.* at 794 (quoting *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1511 (9th Cir. 1994)). Instead, Congress made it "abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities." *Id.* (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978)). The Eighth Circuit Court of Appeals has similarly indicated that the traditional factors do not apply to cases involving the violation of an explicit statutory provision. *See Burlington Northern R. Co. v. Bair*, 957 F.2d 599, 601-02 (8th Cir. 1992) (stating that "where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction"); *cf. Nat'l Wildlife Fed'n v. Harvey*, 440 F. Supp. 2d 940, 955-58 (E.D. Ark. 2006) (analyzing a claim under the Endangered Species Act and finding that, because the underlying facts did

3

not allege a direct violation of an explicit provision of the Endangered Species Act, the traditional factors should still apply). It appears that the violation alleged in the instant action falls within this category of cases. However, even if the court were to apply the traditional factors, the outcome would be the same.

Although framed as a request for preliminary injunction, the court finds it appropriate to consider whether a temporary restraining order should issue under Rule 65(b) until a trial can take place. *See* Motion at 2 (requesting that the court provide "emergency relief"). After reviewing the affidavits and exhibits, the court concludes that it is appropriate to grant temporary relief until such time that the Motion and Complaint (docket no. 2) can be addressed in full.

The court finds that Plaintiffs have demonstrated sufficient likelihood of success on the merits of their claim for purposes of a temporary restraining order. When determining whether a party has demonstrated "likelihood of success on the merits, the court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Global Geophysical Servs., Inc v. Kuster*, No. 4:15-CV-16, 2015 WL 570918, at *3 (D.N.D. Feb. 11, 2015) (unpublished decision) (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)) (quotation marks omitted). However, when examining this factor, the "court does not decide whether the movant will ultimately win." *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a court cannot order injunctive relief if the movant cannot possibly prevail on the merits of his or her claim, "the Eighth Circuit has rejected a requirement as to a party seeking preliminary relief prove a greater than fifty [percent] likelihood that he will prevail on the merits." *Id.* at 1143 (quoting *Dataphase*, 640 F.2d at 113) (quotation marks omitted). Here, Plaintiffs argue that they will prevail because they have succeeded in proving that "defendants harass and harm endangered

4

exotic cats in their possession" in prior litigation and that circumstances at Cricket Hollow Zoo have not changed since that time. Motion at 8. The court finds that, for purposes of the temporary restraining order, Plaintiffs have demonstrated sufficient likelihood of success on the merits.

The balance of harms and the public interest in this action also favor the Plaintiffs. "The plain intent of Congress in enacting [the Endangered Species Act] was to halt and reverse the trend toward species extinction, whatever the cost. This is reflected not only in the stated policies of the Act, but in literally every section of the statute." *Tenn. Valley Auth.*, 437 U.S. at 185; *see also Bensman v. U.S. Forest Serv.*, 984 F. Supp. 1242, 1247 (W.D. Mo. 1997) (citing *Tennessee Valley* and finding that a preliminary injunction should issue under the Endangered Species Act). Due to the strong policy in favor of protecting endangered animals, the court finds that the balance of harms and the public interest weigh in favor of granting a temporary restraining order. Furthermore, the court finds that Plaintiffs have sufficiently demonstrated that "immediate and irreparable injury, loss, or damage will result to the movant" without such relief. *See* Fed. R. Civ. P. 65(b). In particular, the affidavits of Megan Ross, Senior Vice President at the Lincoln Park Zoo in Chicago, and Pat Craig, the Executive Director of The Wild Animal Sanctuary, demonstrate the need for a qualified veterinarian to examine the African lions and, potentially, provide medical care. *See* Ross Affidavit (docket no. 3-5) (stating that, "[i]f the African lioness has not yet been treated by a qualified veterinarian, then I recommend she be examined by a qualified veterinarian as soon as possible to provide an expert medical assessment"); Craig Affidavit (docket no. 3-7) (stating that the African lioness should be "examined by a qualified veterinarian as soon as possible"); *see also* Marlin Affidavit (docket no. 3-6) (describing the condition of the lions). Dr. Ross states that "the African lioness appears thin, has poor body condition, and displays an abnormal posture . . . [which] could be indicators of compromised wellbeing." Ross Affidavit at 3.

5

Based on the affidavits, Plaintiffs have sufficiently demonstrated that irreparable injury may occur.

Because the court finds that there is a "threat of immediate and irreparable injury," the court finds that emergency relief is appropriate. *See* Fed. R. Civ. P. 65(b)(1)(A). Accordingly, the court shall grant the Motion in part. Because Defendants have received only limited notice and have not had sufficient time to respond, the court will apply the restrictions of a temporary restraining order to the instant action.[2] Accordingly, the temporary restraining order shall issue as follows:

(1) Defendants shall permit a qualified veterinarian to examine the African lions as described in the Motion. The veterinarian shall communicate any treatment recommendations to Defendants.

(2) Plaintiffs shall be responsible for any costs associated with the veterinarian's travel to Cricket Hollow Zoo and examination of said lions.

(3) This temporary restraining order expires **on Thursday, August 4, 2016**.

(4) This temporary restraining order shall be binding upon the parties to this action, their officers, agents, servants, employees and attorneys, and upon any persons acting in concert with said parties who receive actual notice of this order.

As discussed at the hearing, the court finds it appropriate to set an expedited trial date in this matter. Defendants must respond to the Complaint **by no later than Tuesday, July 26, 2016**. The parties must exchange witness and exhibit lists **by no later than Tuesday, July 26, 2016**. Witness and exhibit lists must be filed with the court **by no later than Thursday, July 28, 2016**. Trial will begin on **Monday, August 1, 2016 at 9:00 a.m.** in Courtroom 1, 111 Seventh Avenue SE, Cedar Rapids, Iowa. The court will issue

---

[2] *See* July 19, 2016 Order (docket no. 6) requiring Plaintiffs to notify Defendants of the Motion and of the hearing.

a separate trial scheduling order setting forth additional dates and times for the trial.

Based on the foregoing, the Motion is **GRANTED IN PART**.

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA