Larry J. Thorson (PIN AT0007976)
 lthorson@akklaw.com
ACKLEY, KOPECKY & KINGERY, L.L.P.
4056 Glass Rd. NE
Cedar Rapids, IA 52402
Telephone: 319-393-9090
Fax: 319-393-9012

Attorney for Defendants

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| TRACEY K. KUEHL, an individual; ) | |
| LISA K. KUEHL, an individual; ) | Case No. 16-cv-2078 |
| KRISTINE A. BELL, an individual; ) | |
| NANCY A. HARVEY, an individual; ) | |
| JOHN T. BRAUMANN, an individual, ) | |
| and; ANIMAL LEGAL DEFENSE ) | |
| FUND, a non-profit corporation, ) | **ANSWER OF PAMELA SELLNER,** |
| ) | **TOM SELLNER and CRICKET** |
| Plaintiffs, ) | **HOLLOW ZOO** |
| ) | |
| vs. ) | |
| ) | |
| PAMELA SELLNER, an individual; ) | |
| TOM SELLNER, an individual; and ) | |
| CRICKET HOLLOW ZOO, a ) | |
| non-profit corporation, ) | |
| ) | |
| Defendants. ) | |
| ) | |

COME NOW the Defendants and for their answer to the Complaint filed by the Plaintiffs, respond as follows:

**STATEMENT OF THE CASE**

1.      Admit that the Complaint is filed under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544, but deny there was an unlawful "take" as that term is defined under that Act.  Further state that the Zoo is run by the Sellners and as an Iowa nonprofit corporation, it does not have shares or shareholders.  Further state that it is a licensed facility under the Animal Welfare Act 7 U.S.C. § 2131 et seq., License No. 42-C-0084, by the USDA.  The Zoo contains only two animals that are listed as "threatened" under the ESA and no endangered animals.

2.      Paragraph two is denied and Defendants further state that the "evidence" has been presented to both Federal and State authorities who have not taken the same view of the situation at the Zoo and Defendants further state that the enclosures for the animals meet or exceed the requirements for enclosures under the Animal Welfare Act. The Court, in its previous ruling, also stated that the same Plaintiffs had failed to meet their burden of proving the cage sizes or materials constituted a take within the meaning of the ESA.  *See* 6:14-cv-02034, filed February 11, 2016, p. 70.

3.      Defendants admit that there was a trial and further admit that the Order entered by Judge Scoles speaks for itself but further state that the Court stated in that Order that the Defendants were "enjoined from acquiring any additional animals on the endangered species list, without first demonstrating an ability to care for the animals and receiving Court approval." Court Order dated February 11, 2016, p. 72.

2

4. Defendants admit that African Lions were listed as being "threatened" under the ESA on or about January 22, 2016.

5. Defendants deny paragraph five and further state that the enclosures meet or exceed the guidelines for enclosures under the AWA guidelines for exhibitors. Defendants further deny the allegations and exaggerated statements made by the Plaintiffs and in addition state that except for the film of the lions made by Jeff Marlin, a private investigator for the Plaintiffs, none of the accusations deal with the time period after the African Lions were listed as endangered on January 22, 2016.

6. Defendants deny that any lion has "disappeared" from the Zoo and further state that the inventory of big cats has been disclosed and explained to USDA APHIS Inspectors.

7. Defendants deny that Jeff Marlin's description of the behavior or condition of the lion is accurate or true. The lions at the Zoo are both female lions.

8. Paragraph eight is denied.

## PARTIES

### Plaintiffs

9. Paragraph nine is denied for lack of knowledge.

10. Paragraph 10 is denied for lack of knowledge.

11. Paragraph 11 is denied for lack of knowledge and Defendants further state that in June of 2012 over the course of 30 days the zoo only had 1.7 inches of total

rainfall. There was not standing water in the pens as the Plaintiffs claim. Further there are no garbage bins in the zoo and no garbage strewn about. The hoofstock is located on dry lots and the cats are on pea gravel.

12. Paragraph 12 is denied and it is further stated that on July 6 it was 99° Fahrenheit for a high and it hadn't rained at the zoo since .2 of an inch fell on June 29, 2012.

13. Paragraph 13 is denied except that it was admitted the Sheriff came out to the facility because the Plaintiff, Tracey Kuehl, apparently had called the Sheriff. The Sheriff took no action because of these calls. No action other than phone calls was taken by any of the other individuals listed as having received calls from her concerning the condition of the zoo.

14. The allegations of paragraph 14 are denied and it is further stated that on June 26, 2013, the zoo received 1.4 inches of rain that day and the previous week had more than three inches of rain. It is also specifically denied that there is any "gray wolf" at the Zoo and has not been at any time in the past.

15. Paragraph 15 is denied and it is further stated that the piglets the Plaintiffs refer to were born a week early and were born in the afternoon after the morning walk through occurred.

16. Paragraph 16 is denied.

17. Paragraph 17 is denied for lack of knowledge.

4

18. Paragraph 18 is denied.

19. Paragraph 19 is denied for lack of knowledge.

20. Paragraph 20 is denied.

21. Paragraph 21 is denied.

22. Paragraph 22 is denied.

23. Paragraph 23 is denied.

24. Paragraph 24 is denied.

25. Paragraph 25 is denied for lack of knowledge.

26. Paragraph 26 is denied.

27. Paragraph 27 is denied for lack of knowledge.

28. Paragraph 28 is denied and it is further stated that the bears go to the feeder tube as soon as kids walk the steps to the feeder tube. The cattle had water which is contrary to what the Plaintiffs have stated in the Complaint.

29. Paragraph 29 is denied.

30. Paragraph 30 is denied.

31. Paragraph 31 is denied and it is further stated that the Plaintiffs have not asked the Sellners what happened to the lion nor have they (to the Sellners' knowledge) discussed this with any USDA official.

32. Paragraph 32 is denied.

33. Paragraph 33 is denied for lack of knowledge.

5

34. Paragraph 34 is denied and it is further stated that the dogs are house pets, the feed was baleage (fermented wet long stem hay), the llamas naturally have dung piles they congregate near, and the "multi-colored" food was a birthday cake for one of the dogs.

35. Paragraph 35 is denied and it is further stated that chores were being done at the time that Plaintiff Harvey approached Pamela Sellner and Sellner told Harvey not to enter restricted areas but Ms. Harvey continued anyway contrary to those orders.

36. Paragraph 36 is denied for lack of knowledge.

37. Paragraph 37 is denied.

38. Paragraph 38 is denied.

39. Paragraph 39 is denied for lack of knowledge.

40. Paragraph 40 is denied for lack of knowledge.

41. Paragraph 41 is denied for lack of knowledge.

42. The many allegations contained in paragraph 42 are denied. The allegations about the young girl supposedly left alone with the tiger cub are false. The Zoo was only open on weekends in October and every weekend was dry except for October 13 and 14, 2012 and the Zoo has never had "gray wolves." It has always had wolf hybrids (a mixture of wolf and dog). The wolf hybrids had dry areas in their enclosures. The hooves of the livestock were trimmed by the Sellners or a professional trimmer on a regular basis. None were lame.

43. Paragraph 43 is denied.

44. Paragraph 44 is denied.

45. Paragraph 45 is denied for lack of knowledge.

46. Paragraph 46 is denied.

## Defendants

47. Paragraph 47 is admitted except for the derogatory description of the Zoo as a "roadside menagerie."

48. Defendants admit paragraph 48 and further state that they operate the Zoo. Because nonprofits do not have shares or shareholders, it is not known what is meant by "own" the Zoo.

## JURISDICTION AND VENUE

49. Paragraph 49 is admitted.

50. Paragraph 50, as to the first sentence, is admitted. As to the second sentence, the Defendants deny that 16 U.S.C. § 1540 provides any additional basis for jurisdiction of the Court because the Defendants are not engaged in any business as importers or exporters of "fish, wildlife, or plants" and they have not violated the applicable provisions of Federal law including 16 U.S.C. § 1540.

51. Paragraph 51 is admitted in part but it is denied that the Defendants had any violations to remedy concerning the Endangered Species Act. Furthermore, the Defendants can obtain endangered species within the State of Iowa and animals can be

donated legally to the zoo. The Defendants have not obtained any additional endangered species since the Court Order of February 11, 2016.

52. Paragraph 52 is admitted to the extent that venue would be proper if violations did occur of the ESA in this District.

## STATUTORY AND REGULATORY FRAMEWORK

53. Paragraph 53 is admitted.

54. Paragraph 54 is admitted as far as the definition of endangered species includes the language that is quoted but also includes additional language. The Defendants also admit that the phrase "threatened species" includes the definition that is given along with additional language that is not included in the definition set forth in the Plaintiffs' pleading.

55. Paragraph 55 is admitted and it is further stated that the ESA has exceptions for USDA licensed facilities.

56. Paragraph 56 is admitted. With regard to the second sentence in paragraph 50, 50 C.F.R. §17.31(a) does not actually prohibit the take of species listed as threatened but provides for permits to be issued under certain subparts and exceptions are provided in subpart A (50 C.F.R. §17.31).

57. Paragraph 57 is admitted.

58. Paragraph 58 is denied to the extent that the language of the statute refers to endangered species – not threatened species and further state that the language

quoted does not refer to any species that would be transferred within the State of Iowa or a transfer that did not involve commercial activity such as a donation.

## FACTS GIVING RISE TO THE COMPLAINT

### The Cricket Hollow Zoo

59. Paragraph 59 is admitted but it is further stated that the Zoo is licensed and inspected by the United States Department of Agriculture and the Iowa Department of Agriculture and Land Stewardship.

60. Paragraph 60 is true to the extent that Defendant referred to is the zoo. The zoo retains the proceeds not the individual Defendants the Sellners.

61. Paragraph 61 is admitted to the extent that the United States Department of Agriculture has issued citations and warnings against the zoo. It is further stated that these issues have been corrected when brought to the attention of the zoo.

62. Paragraph 62 is denied and it is further stated that the enclosures currently meet or exceed the requirements for enclosures for the animals located at the Zoo.

63. Paragraph 63 is admitted to the extent that the United States Department of Agriculture has issued citations and warnings against the Zoo. It is further stated that these issues have been corrected when brought to the attention of the Zoo.

64. Defendants admit that is what the report states but further state that the Defendants disagree with the conclusion of the USDA Inspector.

9

65. The Defendants have added a staff person who is trusted to deal with the exotic animals at the Zoo.

66. Paragraph 66 is denied. No report has indicated "grossly inadequate sanitation" but instead has found what inspectors consider to be an accumulation of more than a normal amount. The Defendants disagree with this characterization.

67. Defendants admit that the language was part of the suspension. Further state that the suspension was lifted and the Zoo has had its license renewed by the USDA since this suspension.

68. Defendants admit that the Zoo has been inspected on December 10, 2015 and April 14, 2016.

69. Paragraph 69 is denied and it is further stated that Mr. Marlin is hardly an impartial observer having been hired by the Plaintiffs as an agent by them to spy upon the Sellners and the Zoo.

70. Paragraph 70 is denied. The Defendants have increased the veterinarian visits to monthly starting with April of this year (the USDA only requires an annual inspection by a veterinarian of a facility) and have only been cited a couple of times by an inspector for situations where the inspector thought additional veterinary care should have been provided (both instances of which have been disputed by the Defendants).

71. Defendants deny paragraph 71 and further state that the figure does not take into account free advice that Mrs. Sellner obtained from the Primate Institute (?) in Madison, Wisconsin, nor the pro bono assistance Dr. Pries may have received from the Henry Doorly Zoo in Omaha, Nebraska, nor medications that may have been purchased for the Zoo animals by the Sellners. Further, this does not take into account that hoofstock is normally seen by another veterinarian group that also looks after the dairy herd.

## The African Lions

72. Defendants admit paragraph 72 but further state that there is a difference between threatened and endangered species and the Plaintiff has the burden to prove which group the two lions at Cricket Hollow Zoo fall under.

73. Defendants admit paragraph 73.

74. Defendants admit paragraph 74 and further state that a permit is not required for the USDA licensed zoo to keep African lions at the Zoo.

75. Paragraph 75 is denied and further stated that Tracey Kuehl, who claims to have a special relationship with the animals at the Zoo, did not tell Mrs. Sellner about the incident and did not ask the alleged "teenagers" to stop taunting the lioness.

76. Paragraph 76 is denied except that there have been flies at the Zoo and some have landed on the lions.

11

77. Paragraph 77 is denied except that the Zoo did have four lions on that date.

78. Paragraph 78 is admitted to the extent that one lion who was sent from a southern climate to a location in Wisconsin first and then to the Zoo did not acclimate and died from that – not from inadequate enclosures. No USDA report has ever stated that the Zoo's enclosures aren't adequate for the Iowa climate.

79. Paragraph 79 is admitted. A lion did not "disappear" from the Zoo but the male lion died last year and the USDA Inspector was made aware of this.

80. Paragraph 80 is admitted that there are two lions at the Zoo but denied that Mr. Marlin saw a male lion and a lioness at the Zoo on that date. There are two lionesses at the Zoo.

81. Paragraph 81 is denied and further stated that Mr. Marlin has no veterinary training, that the lions were both examined by the Zoo's vet twice in the past month including on July 20, 2016, and that his analysis of the lion's condition is not at all what was observed by Dr. Pries.

82. Defendants admit that Mr. Marlin took video footage (which is expressly against the Zoo's written policy) and deny that he observed flies and feces everywhere.

83. Paragraph 83 is denied.

84. Paragraph 84 is denied.

## CLAIMS FOR RELIEF

## Violations of the Endangered Species Act

### Count I – Unlawful "Take" of Protected Species

85.     The Defendants respond as set forth above and their response is incorporated herein by reference.

86.     Defendants admit that ESA uses those words but deny that the Zoo which is licensed under the Animal Welfare Act (AWA) is involved in a "take" or that it needs a permit to have the lions.

87.     Paragraph 87 is denied.

88.     Paragraph 88 is admitted but it is further stated that the Zoo has not committed any violations of the ESA that would justify imposition of injunctive relief or justify the award of costs of litigation, including reasonable attorney and expert witness fees.

89.     The Defendants respond as set forth above and their response is incorporated herein by reference.

### Count II – Unlawful Possession of Protected Species

90.     Paragraph 90 is admitted.

91.     Paragraph 91 is denied.

92.     Paragraph 92 is admitted but it is further stated that the Zoo has not committed any violations of the ESA that would justify imposition of injunctive relief or

justify the award of costs of litigation, including reasonable attorney and expert witness fees.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Plaintiffs fail to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Plaintiffs lack standing to bring this lawsuit because they have not been injured or adversely affected by the actions of the Defendants and instead the Plaintiffs have gone out of their way to enter, spy on, and impede the operations of the Defendants.

### THIRD AFFIRMATIVE DEFENSE

The Defendants and Plaintiffs have agreed to settle this matter according to terms set forth in emails between the parties hereto.

### FOURTH AFFIRMATIVE DEFENSE

The Defendants are not liable for any actions that are alleged to have occurred before African lions were listed as threatened under the ESA.

## PRAYER FOR RELIEF

A.  The Defendants pray that this action be dismissed against them and/or judgment be entered in favor of the Defendants.

B.   Pursuant to 16 U.S.C. §1540(g)(4) pray that the Court award the cost of litigation including reasonable attorney's fees and expert witness fees to the Defendants for defending said action.

C.   The Defendants' pray that the Court enter and enforce the settlement agreement reached by the parties.

Dated: _____July 26, 2016_____   Respectfully submitted,

_____
Larry J. Thorson                    #AT0007976
ACKLEY KOPECKY & KINGERY, L.L.P.
4056 Glass Road, NE
Cedar Rapids, IA 52402
Ph: (319) 393-9090  Fax: (319) 393-9012
Email: lthorson@akklaw.com

Copies to:

Daniel J. Anderson
Wertz & Dake
1500 Center St. NE #101
Cedar Rapids, IA 52402-5500
danderson@wertzlaw.com

Jeff Pierce
Animal Legal Defense Fund
170 E. Cotati Avenue
Cotati, CA 94931
jpierce@aldf.org

Jessica Blome
Animal Legal Defense Fund
170 E. Cotati Avenue
Cotati, CA 94931
jblome@aldf.org

David J. Stagman
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661
david.stagman@kattenlaw.com

## Certificate of Service

The undersigned hereby certifies that I filed this document on the 26th day of July, 2016 with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

_/s/ Theresa Treanor_